UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN J. SROK and
CHRISTINE M. FISCHER-SROK,

    Plaintiffs,

   v.                                      Case No. 15-CV-239

BANK OF AMERICA, As Successor in Interest
To BAC Home Loan Servicing, LP; FEDERAL
NATIONAL MORTGAGE ASSOCIATION,

    Defendants.

## DECISION AND ORDER ON DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT

      Steven J. Srok and Christine M. Fischer-Srok allege breach of contract, negligence, and a violation of the Real Estate Settlement Procedures Act ("RESPA") against Bank of America and the Federal National Mortgage Association ("the defendants") arising out of the process of attempting to modify their mortgage loan. The Sroks allege that the bank made explicit representations that they would accept and process a loan modification application and then failed to follow through, causing the Sroks to fall further behind on their mortgage payments. The defendants have moved to dismiss the plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that it fails to state a claim upon which relief can be granted. (Docket # 18.) The motion has been fully briefed and is ready for disposition. For the reasons that follow, I will grant in part and deny in part the defendants' motion.

## BACKGROUND

In their amended complaint, the Sroks allege that they signed a Note and Mortgage dated January 9, 2008 in the amount of $328,800.00 with M&I Marshall and Ilsley Bank. (Pls.' Am. Compl. ¶ 7, Docket # 16.) The Note was a fixed rate note with an annual interest rate of 6% and monthly principal and interest payments of $1,971.33. (*Id.*) The Sroks began making payments on March 1, 2008. (*Id.*) In 2009, however, the Sroks experienced financial difficulties and by the latter half of the year they fell behind on their mortgage payments. (*Id.* ¶ 8.) The Sroks allege that in August or September 2009, they contacted Bank of America, and the bank represented that it would accept and process a loan modification application for their mortgage loan under the Home Affordable Modification Program ("HAMP"). (*Id.*) The Sroks allege that the bank told them to send two paystubs each for review, which they did, and they maintained telephone contact with the bank on a weekly basis. (*Id.* ¶ 9.)

In November 2009, the Sroks allege that the bank advised them by telephone that it would not consider them for a loan modification because their income was too high to qualify under HAMP. (*Id.* ¶ 10.) The Sroks assert, however, that the bank miscalculated their income. (*Id.*) The Sroks allege that even though they advised the bank of the error, they were told that they would be required to send $3,000.00 per month for a trial period payment to begin in November 2009. (*Id.* ¶ 11.)

In January 2010, the Sroks had further telephone communication with the bank, who again advised them that they did not qualify for the HAMP program. (*Id.*) After questioning the bank and again explaining the income issue, the Sroks allege that the bank recalculated the trial period payments and advised them to begin a new trial period payment in the amount of $1,835.38. (*Id.* ¶ 12.) The bank also advised the Sroks they would need to again

send in the loan modification application, a new hardship letter, paystubs, and bank statements. (*Id.*) However, the bank never sent the Sroks written confirmation of a Trial Period Plan. (*Id.*) The Sroks also allege that there was no provision in the underlying note and mortgage that required the defendants to consider the Sroks for a HAMP modification. (*Id.*) The Sroks faxed the requested information on or about January 21, 2010. (*Id.* ¶ 13.) The Sroks began to make the trial period payments in the amount of $1,835.38 beginning in February 2010 and continued making payments until June 2010. (*Id.*)

The Sroks allege that between January 2010 and June 2010 they had weekly contact with the bank. (*Id.* ¶ 14.) The bank would also call and advise the Sroks that they were behind on their mortgage payments, to which the Sroks responded that they were on a trial period payment and were in the process of being assessed for a loan modification. (*Id.*) The Sroks further allege that during this time period, the bank periodically advised them to send in new supporting documents because the documents previously submitted were too old for a HAMP modification. (*Id.*) The Sroks allege that the documents became outdated because the bank failed and refused to process the Sroks' loan for modification. (*Id.*) The loan modification process was not complete as of June 2010. (*Id.*)

During the month of June 2010, the Sroks continued to receive telephone calls from the bank's collection department. (*Id.* ¶ 15.) The Sroks were informed by the bank that they were working on the modification, but they were again asked to send a hardship letter, bank statements, and paystubs. (*Id.*) In August 2010, the bank requested a Profit and Loss statement from Steven Srok's business, which he provided. (*Id.* ¶ 16.) The Sroks allege that the bank again miscalculated their income and recalculated their trial period payment to $2,800.00 per month. (*Id.*)

In October 2010, the Sroks discussed the loan with the bank, who advised them that they would recalculate the Sroks' payment and that the Sroks should begin making payments at the recalculated amount in November 2010. (*Id.* ¶ 18.) However, the Sroks were served with foreclosure papers during the first week of November 2010 without further response on their trial period payments or loan modification. (*Id.*) During the foreclosure action, the Sroks engaged in settlement discussions with the bank that again involved submitting a loan modification application with supporting papers in April 2011. (*Id.* ¶ 21.) The Sroks did not receive a response from the defendants during the course of 2011. (*Id.*)

On or about March 2012, the bank sent correspondence to the Sroks advising them of a potential loan modification. (*Id.* ¶ 22.) The Sroks submitted further financial documentation to pursue the loan modification, including paystubs and bank statements. (*Id.*) Thereafter, the bank proposed a stipulation to dismiss the foreclosure action and the Sroks agreed, based on the bank's representations that they would consider and complete the loan modification. (*Id.* ¶ 23.) The foreclosure action was dismissed on August 30, 2012. (*Id.*)

Over the next two months, the Sroks maintained periodic telephone contact with the bank, who advised them that they were approved for a loan modification and that they would be getting written communication, including the loan modification. (*Id.* ¶ 24.) The Sroks never received the written loan modification. (*Id.*) In October 2012, the Sroks were advised that the Federal National Mortgage Association had approved them for a loan modification but the bank was not going to accept it because of the amount of delinquent interest on the account. (*Id.* ¶ 25.) The Sroks were told to reapply for another loan modification, which they did. (*Id.*)

For the next six months, the bank failed to provide the Sroks with any explanation regarding the status of their loan modification. (*Id.* ¶ 26.) In April 2013, the bank told the Sroks that it was not processing their loan modification because their account was on a legal hold due to litigation. (*Id.*) The Sroks allege they then sent a correspondence as a Qualified Written Request ("QWR") under RESPA to dispute the legal hold. (*Id.* ¶ 27.) For the next five months, the Sroks did not communicate with the defendants. (*Id.*)

In November 2013, the bank advised the Sroks to once again submit a loan modification. (*Id.*) The Sroks provided further paystubs and bank statements and completed another loan modification application in December 2013. (*Id.* ¶ 28.) In April 2014, the bank advised the Sroks that they had been approved for a trial modification, which required them to make trial period plan payments in the amount of $2,575.74 beginning June 1, 2014. (*Id.* ¶ 29.) The Sroks made payments in the amount of $2,575.74 for June, July and August 2014. (*Id.*) The Sroks allege that they continued to make the Trial Period Plan payments and waited for further communication and confirmation of their permanent loan modification from the defendants. (*Id.*) The Sroks allege that they complied with the Trial Period Plan by signing the Trial Period Plan and submitting all necessary monthly payments as well as all necessary paperwork to the bank. (*Id.*)

In August 2014, the bank offered a loan modification to the Sroks with a new loan balance of $456,656.68, including past due interest in the amount of $72,244.74. (*Id.* ¶ 30.) The Sroks rejected this loan modification and advised the defendants that the additional interest was not acceptable to them due to the failure of the bank, acting on behalf of the Federal National Mortgage Association, to process multiple previous loan modifications and financial documents accurately and in a timely manner. (*Id.*)

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679.

# ANALYSIS

In their amended complaint, the Sroks allege three causes of action against the defendants. First, the Sroks allege two causes of action for breach of contract stemming from representations the bank made regarding the loan modifications. In the first cause of action, the Sroks allege that the bank offered on multiple occasions to process a loan modification and the Sroks accepted the offers, but the bank never followed through in processing the loan modification. In the second cause of action, the Sroks allege that they entered into an agreement with the bank to dismiss the foreclosure action based on the bank's representations that they would accept and process a loan modification for the Sroks, and the bank breached this agreement. Second, the Sroks allege that the bank assumed a duty of ordinary care to accept and process their loan modifications and negligently breached this duty. Third, the Sroks allege that the bank violated RESPA by failing to provide a proper response to their qualified written request. I will address each in turn.

1. *Breach of Contract*

The Sroks' first two causes of action allege that the bank breached its contract with them, as well as breaching the duty of good faith and fair dealing implicit in every contract. To state a claim for breach of contract, the plaintiffs must allege (1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach. *Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 801 (W.D. Wis. 2006) (citing *Northwestern Motor Car, Inc. v. Pope*, 51 Wis. 2d 292, 296, 187 N.W.2d 200, 203 (1971)). To be enforceable, the obligations arising from the contract must be definite or reasonably certain. *Id.* (citing *Farnsworth, McKoane & Co. v. N. Shore Sav. & Loan Ass'n*, 504 F. Supp. 673, 675–76 (E.D. Wis. 1981)). The Sroks argue that

the parties had an oral agreement to accept and process a loan modification under HAMP, which the defendants breached. (Pls.' Resp. Br. at 14, Docket # 23, Pls.' Am. Compl. ¶¶ 27, 35.) The defendants principally rely on two cases in support of their argument that the Sroks failed to state a claim for breach of contract, *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), and *Pulsifer v. U.S. Bank et al.*, No. 13-CV-648, 13-CV-835, 2014 WL 61230 (E.D.Wis. Jan. 8, 2014) (*Pulsifer I*).

By way of background, the U.S. Department of the Treasury implemented HAMP to help homeowners avoid foreclosure amidst the sharp decline in the nation's housing market in 2008. *Wigod*, 673 F.3d at 554. When a borrower qualifies for a HAMP loan modification, the modification process consists of two stages: a Trial Period Plan under the new loan repayment terms and a permanent loan modification. *Id.* at 557. HAMP, however, does not create a private federal right of action for borrowers against servicers. *Id.* at 559 n.4.

In *Wigod*, the Seventh Circuit considered whether a Trial Period Plan under HAMP was an offer which, if accepted, could form the basis for an enforceable contract under Illinois law. *Id.* at 560-566. The court also considered whether the fact that HAMP does not provide a private federal right of action prevents a borrower from bringing a state cause of action (such as breach of contract) against the servicer. *Id.* at 581. As to the first question, the court found, looking at the terms of the Trial Period Plan, that it could form the basis for an enforceable contract, but only if the loan servicer actually executed the Trial Period Plan. *Id.* at 562. It stated: "[W]hen Wells Fargo executed the TPP, its terms included a unilateral offer to modify Wigod's loan conditioned on her compliance with the stated terms of the bargain . . . . [h]ere a reasonable person in Wigod's position would read the TPP as a definite offer to provide a permanent modification that she could accept so long as she

satisfied the conditions." *Id.* As to the second question, the court found that the fact there is no private federal right of action under HAMP did not foreclose a proper state law claim and thus allowed the plaintiff's breach of contract claim to stand. *Id.* at 576.

In *Pulsifer I*, the court, following *Wigod*, dismissed the plaintiffs' claim for breach of the duty of good faith and fair dealing because the defendant did not execute the plaintiffs' Trial Period Plan. 2014 WL 61230 at *3. The *Pulsifer* court found that because the defendant did not execute the Trial Period Plan, there was no unilateral offer to modify the plaintiffs' loan conditioned on their compliance with the stated terms of the agreement. *Id.* The court found that without a valid offer, there could be no underlying contract, and without an underlying contract, the plaintiffs' claim for breach of the duty of good faith and fair dealing failed. *Id.*

When the plaintiffs moved for reconsideration of the court's finding, arguing that an unexecuted Trial Period Plan could reasonably be interpreted as an offer to modify their loan so long as they complied with the conditions of the Trial Period Plan, the court disagreed. The court found, based on the express language of the Trial Period Plan, that the lender was required to provide a fully executed copy of the Plan. *Pulsifer v. U.S. Bank, et al.*, No. 13-CV-648, 13-CV-835, 2014 WL 4748233, *3 (E.D. Wis. Sept. 23, 2014) (*Pulsifer II*) (internal quotations and citations omitted). In response to the plaintiffs' argument that the Trial Period Plan was an offer to *process* their application for a loan modification in compliance with HAMP guidelines, the court stated:

> When the issue is framed as such, it becomes clear that the Pulsifers have no cause of action. Home loan servicers, such as Wells Fargo, undertake their HAMP obligations voluntarily via contract with the Department of the Treasury. As the Seventh Circuit observed in *Wigod*, "Congress did not create a private right of action to enforce the HAMP guidelines, and since *Astra* [*USA, Inc. v. Santa Clara Cnty.*, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 1342, 179 L.Ed. 2d

9

> 457 ( 2011) ], district courts have correctly applied the Court's decision to foreclose claims by homeowners seeking HAMP modifications as third-party beneficiaries of SPAs." Therefore, the Court must reject the Pulsifers' attempt to enforce the HAMP guidelines under the guise of a claim sounding in contract.

*Id.*

Although the Sroks make no attempt to distinguish their case from either *Wigod* or *Pulsifer*, there is one important difference—there is no Trial Period Plan document to examine in the record. Both *Wigod* and *Pulsifer* turn on the fact that the express language of the Trial Period Plan provided that there was no binding offer unless the lender provides the borrower a fully executed copy of the Trial Period Plan. The Sroks argue that they had an *oral* agreement with the bank and thus the dispute "cannot be determined from the motion on file by the defendant at this stage in the case." (Pls.' Resp. Br. at 14.) However, the Sroks pled in their amended complaint that they signed a Trial Period Plan. (Pls.' Am. Compl. ¶ 29.) Thus, even though a written agreement exists, the Sroks did not include a copy of the Plan as an exhibit to their complaint so that the terms of the proposed agreement could be examined.

Although the Sroks attempt to reframe this issue as a breach of an oral agreement, I do not see how their situation differs from that in *Wigod* or *Pulsifer*. Just as in those cases, the Sroks argue that the defendants breached an agreement to process a loan modification under HAMP. The *Wigod* court found that the Trial Period Plan formed the basis for the breach of contract action. 673 F.3d at 560. Thus, it is the Sroks' Trial Period Plan that forms the basis of their breach of contract action. While the Sroks allege that they signed the Trial Period Plan (Pls.' Am. Compl. ¶ 29), they do not allege that the defendants completed the process. In fact, the Sroks allege multiple times that the defendants never completed the loan

modification process. (*Id.* ¶¶ 14, 19, 24, 35, 40.) Although I do not have the language of the Trial Period Plan before me, I would be surprised if it differed greatly from the language at issue in *Wigod* and *Pulsifer* and thus just as in those cases, without a Trial Period Plan executed by the bank, there was no offer. Further, although the Sroks argue that the defendants failed to follow through and complete the loan modification process, they also allege that the defendants did offer them a loan modification, which they rejected. (*Id.* ¶ 30.) Thus, the Sroks' breach of contract claims fail. Without a valid contract, the Sroks' claim for breach of the duty of good faith and fair dealing also fails. *See Pulsifer I*, 2014 WL 61230 at *3 (citing *Tabatabai v. West Coast Life Ins. Co.*, 664 F.3d 663, 668 (7th Cir. 2011)).

   2.   *Negligence*

The Sroks also allege that the bank was negligent in the processing of their loan modification. The defendants argue that the Sroks' negligence claim is barred by the economic loss doctrine. The Sroks argue that the economic loss doctrine does not preclude their negligence claim because the bank was providing a service in processing the loan, and the economic loss doctrine does not apply to contracts for services.

The economic loss doctrine is a judicially created rule to preserve the distinction between contract and tort by requiring transacting parties to pursue only their contractual remedies when asserting an economic loss claim. *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 27, 283 Wis. 2d 555, 578-579, 699 N.W.2d 205, 216. The economic loss doctrine precludes contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship. *Id.* The economic loss doctrine applies only to contracts for products, not contracts for services. *Insurance Co. of North America v. Cease Elec. Inc.*, 2004 WI 139, ¶ 52, 276 Wis. 2d 361, 381, 688 N.W.2d 462, 472.

In this case, the Sroks argue that their negligence claim is not barred by the economic loss doctrine because Bank of America's actions "are in the nature of a service to modify an existing mortgage loan." (Pls.' Resp. Br. at 5.) The Sroks argue that they do not seek to recover damages based on the terms of the mortgage they took out in 2008; rather, they seek recovery "for actions of the servicer of the loan, starting with the bank's explicit verbal representations in 2009 when it specifically told the Plaintiffs that it would accept and process a loan modification to help them keep their home." (*Id.*) The Sroks argue that the "actions of BOA as the servicer of the loan do not constitute a real estate transaction." (*Id.* at 6.) I disagree. The processing of the paperwork for a loan modification is a necessary step to obtaining the modified product—the mortgage loan. Just as the lender's processing of paperwork so that the borrower can receive a mortgage in the first instance does not transform the mortgage contract into a contract for services, the bank's processing of paperwork in relation to the loan modification does not transform it into a contract for services. Thus, I do not find that the alleged contract to modify the mortgage loan was a contract for services.

The Sroks attempt to bolster their argument that the economic loss doctrine does not apply to their case by citing two Wisconsin cases that allowed negligence actions in a borrower/lender context. (*See id.* at 8-10) (citing *First. Nat. Bank v. Wernhart*, 204 Wis. 2d 361, 370 555 N.W.2d 819 (1996) and *Kornitz & Ewert Co. v. Earling & Hiller*, 49 Wis. 2d 97, 181 N.W.2d 403 (1970)). As an initial matter, neither of these cases analyzed the application of the economic loss doctrine. Further, to the extent the Sroks are arguing that these cases support the general proposition that negligence actions are always available in the borrower/lender context, the cases do not say this and are distinguishable from the case

at hand. In *Wernhart*, the court found that the mortgage lender owed a duty of care to the borrower because the mortgage lender became the agent of the borrower when it "consent[ed] to disburse the loan proceeds and personal funds of the borrower, without further participation by the borrower . . . ." 204 Wis. 2d at 363, 555 N.W.2d at 820. The court found that "[a]ll agents owe their principal a fiduciary duty with respect to matters within the scope of their agency." *Id.* at 370, 555 N.W.2d at 823. In *Kornitz*, the court allowed a negligence claim against a mortgage lender to go forward even though the plaintiff was not a party to the contract but was allegedly in privity with the contracting party because the court was unable, without a trial, to do a "fair and complete evaluation of the policy considerations involved in determining the issue raised as to what liability, if any, attaches to an interm mortgage lender." 49 Wis. 2d at 103, 181 N.W.2d at 406.

      The Sroks further argue that the bank undertook an extra-contractual duty by agreeing to accept and process the loan modification. I again disagree. Although addressing the economic loss doctrine in the context of Illinois law, I find the Seventh Circuit's reasoning in *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676 (7th Cir. 2011) persuasive. In *Catalan*, the court dismissed a negligence claim against the mortgage servicer based on Illinois' economic loss doctrine, stating that the plaintiffs "attempt to fashion a duty from the note-and-mortgage contract, from common law, and from GMAC Mortgage's obligations under RESPA . . . . However, each duty that the plaintiffs identify has its root in the note-and-mortgage contract itself. No matter GMAC Mortgage's failings, the contract itself cannot give rise to an extra-contractual duty without some showing of a fiduciary relationship between the parties." 629 F.3d at 693. This holding is consistent with *Wernhart* in which the Wisconsin Court of Appeals allowed a negligence action in the

borrower/lender context based on the fiduciary relationship between the parties. Thus, as in *Catalan*, to the extent Bank of America had a duty of care in accepting and processing the Sroks' loan modification paperwork, the duty emerged solely out of its contractual obligations—there was no extra-contractual duty.

Further, many courts have held that HAMP guidelines do not impose a state tort law duty of care. *See Pulsifer II*, 2014 WL 4748233 at *5 (collecting cases); *see also Ahmad v. Wells Fargo Bank, NA*, 861 F. Supp. 2d 818 (E.D. Mich. 2012) ("Additionally, because of the overwhelming case law finding that plaintiffs do not have a private right of action to sue for a violation of HAMP . . . courts should be reluctant to allow plaintiffs to recast these claims—involving alleged failures to conform to the provisions of HAMP—as tort violations."). Although the Sroks argue that they are not asserting a HAMP violation and are rather asserting a common law negligence claim (Pls.' Resp. Br. at 10), their negligence allegations arise directly from duties related to HAMP. Thus, it appears to me that the Sroks are attempting to recast a HAMP violation as a tort claim.

Finally, the Sroks rely on *Speleos v. BAC Home Loan Servicing, L.P.*, 755 F. Supp. 2d 304 (D. Mass. 2010) for the proposition that a violation of the HAMP Guidelines may constitute evidence of negligence. However, it appears *Speleos* is an outlier case and several subsequent Massachusetts courts have rejected its reasoning. *See Provost v. Saxon Mortg. Services, Inc.*, No. 4:11–cv–40137–TSH, 2012 WL 1065481, *3 (D. Mass. Mar. 27, 2012) (finding no duty of care for alleged violation of HAMP); *Markle v. HSBC Mortgage Corp.*, 844 F. Supp. 2d 172, 185 (D. Mass. 2011) (declining to recognize a new duty of care based on the HAMP guidelines); *Brown v. Bank of America Corp.*, No. 10–11085, 2011 WL 1311278, *4 (D. Mass. Mar. 31, 2011) ("[W]hile violation of a regulation such as HAMP may provide

evidence of a breach of a duty *otherwise owed*, it does not create such a duty in the first place."). Accordingly, the Sroks' negligence claim against the defendants is barred by the economic loss doctrine and must be dismissed.

    3.    *RESPA*

Finally, the Sroks allege that the defendants violated RESPA by failing to provide a proper response to their Qualified Written Request dated April 18, 2013. The defendants move to dismiss the Sroks' claim, arguing that it complied with the statutory requirements for responding to the Sroks' request.

RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans. *Catalan*, 629 F.3d at 680. The statute imposes a number of duties on lenders and loan servicers. *Id.* This includes the duties of a loan servicer to respond promptly to a borrower's written request for information. *See* 12 U.S.C. § 2605(e). A "qualified written request" will trigger a loan servicer's duties under RESPA to acknowledge and respond. *Id.*

Within 30 days after receiving a qualified written request, the servicer must take one of three actions: either (1) make appropriate corrections to the borrower's account and notify the borrower in writing of the corrections; (2) investigate the borrower's account and provide the borrower with a written clarification as to why the servicer believes the borrower's account to be correct; or (3) investigate the borrower's account and either provide the requested information or provide an explanation as to why the requested information is unavailable. *Catalan*, 629 F.3d at 680; 12 U.S.C. § 2605(e)(2)(A), (B), and (C).

The defendants argue that the bank's response to the Sroks' qualified written request was sufficient under option two in that it investigated their account and provided them with written clarification as to why it believed the account was correct. In their QWR, the Sroks asked why there was a legal hold on their account. (Pls.' Am. Compl., Exh. 2.) The bank responded by stating that "the legal hold on your account is because you are represented by counsel in a litigation action against Bank of America, N.A. Because you are represented by the Law Office of Rollie R. Hanson, S.C. all communication regarding your loan will be counsel to counsel until the litigation is resolved." (Pls.' Am. Compl., Exh. 3.) The defendants argue that the bank's response was sufficient because the Sroks asked why there was a legal hold on their account, to which the bank responded by stating that the legal hold was due to the fact the Sroks were represented by counsel. The Sroks argue that the bank's response was false and inaccurate because there was no litigation action against the bank at that time and that this false response evidences the bank's failure to investigate their account.

The Sroks are correct that the bank stated in its response to the QWR that the legal hold was not simply due to the fact they were represented by counsel (as the defendants argue), but was because they were represented by counsel *in a litigation action* against the bank. The Sroks have alleged that this was incorrect because the QWR was sent on April 18, 2013 and the foreclosure action was dismissed on August 30, 2012. (Pls.' Am. Compl. ¶¶ 56-57.) The Sroks allege that the bank violated 12 U.S.C. §§ 2605(e)(2)(C)(i), (e)(2)(C)(i), and (e)(2)(a) for failure to conduct a proper investigation, correct their records, and take the necessary steps to resolve the dispute. (*Id.* ¶ 55.) I need not decide whether the bank's June 18, 2013 response to the Sroks' QWR was sufficient under the statute. Rather, at this

16

Case 2:15-cv-00239-NJ   Filed 11/06/15   Page 16 of 17   Document 25

juncture, I find that the Sroks' pleadings alleging that Bank of America provided incorrect information in response to their QWR states a claim upon which relief can be granted under § 2605(e)(2) and the defendants' motion with respect to the same will be denied. *See Friedman v. Maspeth Federal Loan and Sav. Ass'n*, 30 F. Supp. 3d 183, 194 (E.D.N.Y. 2014) (finding that complaint stated valid claim under RESPA when defendant gave incorrect information in response to a QWR).

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. The defendants' motion to dismiss the plaintiffs' breach of contract (Claims I and II of the Amended Complaint) and negligence (Claim III of the Amended Complaint) claims is **GRANTED**. However, the defendants' motion to dismiss the plaintiffs' claim under RESPA (Claim IV of the Amended Complaint) is **DENIED**.

Dated at Milwaukee, Wisconsin this 6th day of November, 2015.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge